Filed 12/18/25  P. v. Sloop CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES PATRICK SLOOP,<br><br>    Defendant and Appellant. | H053084<br>(Monterey County<br> Super. Ct. No. 24CR005785) |

Defendant James Patrick Sloop appeals his conviction for arson of property (Pen. Code, § 451, subd. (d)) on the ground that there was insufficient evidence to establish his identity as the perpetrator of the crime.  We hold sufficient evidence supports the jury's finding that Sloop was the arsonist and therefore affirm the judgment.

## I.  FACTS AND PROCEDURAL BACKGROUND

On May 1, 2024, at approximately 3:54 a.m., the victim Dean Burnam woke up to find his two vehicles engulfed in flames in the driveway of his home, which is located on the corner of Highland Street and Plumas Avenue[1] in Seaside.  A neighbor called 911 and the fire department extinguished the fire.  Home surveillance videos from Burnam's home captured the arson.  The videos showed that at approximately 3:46 a.m., an unknown suspect approached Burnam's driveway from Plumas Avenue wearing a

---

[1] Plumas Avenue runs east to west.

sweater with a hood, which covered the suspect's face, long pants, and gloves.  The suspect then opened a container, poured a liquid on the windshield of Burnam's Honda Pilot SUV, and ignited the flame.  At approximately 3:49 a.m., there was a bright flash, and a fire erupted immediately after.  The flames engulfed the Honda and also burned the car parked directly next to it.  Seconds later, the perpetrator fled eastbound on Plumas Avenue.

A neighbor who lives on the corner opposite the victim, near Plumas Avenue and Mescal Street,[2] also captured the suspect's movements on home surveillance videos.  The videos showed a dark-colored vehicle driving southbound on Mescal Street and turning onto Plumas Avenue at approximately 3:41 a.m.  The suspect then parked and turned off the vehicle at about 3:42 a.m.  At 3:45 a.m., the suspect walked westbound on Plumas Avenue towards Burnam's house.  At 3:49 a.m., there was a bright light from the vehicle explosion.  Moments later, the same suspect ran eastbound on Plumas Avenue towards the parked car and threw an unidentified object alongside the road; the object was never recovered.  At 3:50 a.m., the suspect's vehicle fled northbound on Mescal Street.  The race and gender of the arson suspect was not discernable from any of the surveillance videos.

Following the incident, police discovered that a Flock camera—a license plate reading system—took a photograph of the last three digits of the dark-colored sedan's temporary paper license plate as it drove towards Burnam's house at 3:39 a.m.  Police also recovered surveillance video footage from C.K., who lives on Mescal Street.  One of the surveillance videos showed a dark-colored vehicle approaching Mescal Street at about 3:39 a.m.;[3] flashes from the Flock camera taking a picture of the sedan's temporary

---

[2] Mescal Street runs north to south, and the southernmost corner of Mescal naturally turns into Plumas Avenue.

[3] At trial, C.K. testified that the timestamp on his home surveillance videos were 29 minutes slow.  The People therefore obtained the correct time by adding 29 minutes to the video timestamp.

license plate can be seen in the background at the same time. At about 3:50 a.m., C.K.'s surveillance cameras captured the same dark-colored vehicle traveling northbound on Mescal Street at a fast rate of speed; no other vehicles traversed Mescal Street between 3:39 a.m. and 3:50 a.m. Police later determined a Black Mercedes sedan registered to Sloop matched the temporary paper license plate ending in -M03 captured by the Flock camera. After conducting a records search for addresses associated with Sloop, police discovered he lived seven miles north of Burnam in Marina—the drive time between the two homes is about 15-17 minutes.

On May 7th, police arrested Sloop at his home in Marina, seized his cell phone, and impounded his Mercedes. At the time of the arrest, Sloop did not have any burn marks on his face or body. During a search of Sloop's home, police seized a black sweater with a white mark on the right arm sleeve as they suspected it might be a burn mark, but found no accelerants or any other evidence that Sloop was planning or preparing the car fire. Police also recovered surveillance videos from Sloop's home that showed he left his house at 12:07 a.m. on May 1st wearing a black sweater and long pants and returned later that morning at 4:04 a.m. wearing the same clothes. In a recorded post-arrest interview, Sloop stated no one besides him drove his Mercedes.

On May 17, Officer Christopher Van Cor used his K-9 partner Ranger to conduct a sniff test of Sloop's Mercedes to detect the presence of ignitable liquids and explosives. During the search, Ranger gave an alert when he sniffed the front passenger floorboard and the center console "where the driver would put their right arm." Following the sniff search, officers recovered two lighters, cigarettes, and marijuana from the center console of the Mercedes. Police also found a beanie and a pair of black gloves in the passenger compartment of the vehicle, as well as a pair of white gloves in the trunk that had a strong chemical smell and appeared singed.

Thereafter, Sloop was charged with arson of property (Pen. Code, § 451, subd. (d)), with sentencing enhancement allegations that he suffered three prior strikes

3

(*id*., §§ 667, subds. (b)-(i), 1170.12), and two prior conviction enhancements (*id*., § 667.5, subd. (a)(1)).

Before trial, police obtained a search warrant for forensic extraction of data from Sloop's cell phone. The search warrant in this case included location data for call detail records because there was no ping location data available.[4] Call detail records placed Sloop's cell phone in Marina on May 1st at 12:07 a.m. and just after 4:00 a.m. Digital forensics also showed the device was plugged into an AC adapter at 3:42 a.m., 3:50 a.m., and 4:04 a.m. However, the digital forensics investigator found no evidence in Sloop's cell phone showing he was planning or preparing a car fire and there was no location data placing Sloop in Seaside on May 1st. A forensic chemist tested the two sets of gloves found in Sloop's Mercedes but was unable to detect the presence of ignitable fluids in either pair of gloves.

The trial hinged on the identity of the arsonist. The People introduced into evidence the surveillance videos police recovered and called several witnesses to testify in their case-in-chief. As relevant here, the forensic chemist who analyzed the gloves found in Sloop's Mercedes testified that even though the lab tests did not detect the presence of ignitable liquids, it did not mean the substance was never on those items. The forensic chemist explained that ignitable liquids could evaporate or consume if they are not stored properly, which can result in a "non-detect." The forensic chemist opined it was possible that any measurable ignitable liquids on the gloves evaporated since they were stored in open air inside a vehicle for five or six days.

Officer Van Cor similarly testified that with each passing day, ignitable liquids can degrade quickly to a point below detection. Officer Van Cor also opined that the arson suspect wore long sleeves and pants for thermal protection which would make it

---

[4] According to the prosecution's digital forensic expert, police can obtain a search warrant to locate a device in real-time by requesting that a carrier send a ping to the cell phone of interest, for a specified interval.

possible for the person to walk away without any burn marks. Officer Van Cor further stated the white marks on Sloop's sweater were consistent with thermal damage he had seen on other garments in his career but acknowledged he could not say with certainty without testing. With respect to the sniff search of Sloop's Mercedes, Officer Van Cor testified his K-9 partner Ranger was trained to alert when he detected the presence of ignitable liquids and that Ranger had a 98 percent accuracy rating. Officer Van Cor explained that Ranger alerted when he sniffed the right front floorboard area of the passenger side and again when he sniffed over the center console where the lighters were found. On cross-examination, Officer Van Cor admitted he could not say with certainty whether Ranger detected something other than the lighters when he alerted to the presence of ignitable fluids during the sniff search.

The digital forensic investigator who reviewed Sloop's cell phone data also testified. The digital forensic investigator explained that although the forensic data did not show Sloop was in Seaside on May 1st, call detail records only show location information when a call is made using the carrier's network and would not give location information if a user connected to the internet or a third-party application.

Following the prosecution's case-in-chief, the defense presented alibi testimony from Sayla Born, a card dealer at a casino club Sloop frequented. Born stated she started her shift at 8:00 p.m. on May 1st and testified Sloop was there that night until the following morning, May 2d. On cross-examination, Born admitted she did not remember whether she worked the night of April 30th to May 1st, that she talked to Sloop every day while he was in jail, gave him money every week, and told him she would "try everything to make him happy."

In closing, defense counsel argued the People failed to meet their burden of showing that Sloop was the perpetrator of the arson. Counsel emphasized Sloop had no burn marks when he was arrested a few days after the crime, cell phone location data did not place him in Seaside on the night of the arson, the gloves found in his car tested

5

negative for ignitable fluids, the sweater found in Sloop's home was never tested to determine whether the white mark was in fact a chemical burn, there was no evidence that Sloop was planning a fire, police found no accelerants in Sloop's home or car, and claimed Sloop used the lighters found inside his Mercedes to smoke cigarettes and marijuana. Defense counsel also highlighted Sloop had an alibi for the night of the arson, the prosecutor provided no motive explaining why Sloop committed the crime, and that Sloop did not know or have any prior contact with Burnam before the incident.

The jury found Sloop guilty as charged. In a bifurcated proceeding, the trial court found true that Sloop suffered three prior strikes and two prior conviction enhancements. At sentencing, the trial court denied Sloop's *Romero* motion (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497) to dismiss two of his three prior strike convictions. The trial court sentenced Sloop to 25 years to life for arson (under the "Three Strikes" Law), consecutive to five years for one of the two prior conviction enhancements; the trial court dismissed the other prior conviction enhancement.

Sloop timely appealed.

## II. DISCUSSION

Sloop contends his arson conviction should be reversed because the evidence was insufficient to establish his identity as the perpetrator of the crime. We disagree.

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 (*Kraft*).) " 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the

6

trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).)

"The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]" (*Kraft*, *supra*, 23 Cal.4th at pp. 1053-1054.) We "must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

"Circumstantial evidence may be relied upon to establish culpability for arson. [Citation.]" (*People v. Belton* (1980) 105 Cal.App.3d 376, 379-380.) "[T]he very nature of the crime of arson ordinarily dictates that the evidence will be circumstantial." (*People v. Beagle* (1972) 6 Cal.3d 441, 449 (*Beagle*), abrogated on other grounds by *People v. Diaz* (2015) 60 Cal.4th 1176, 1190.) Arson is typically "committed in stealth, without warning and often under the cloak of darkness," and therefore "perpetrators of such clandestine acts frequently escape detection by human eye." (*People v. Andrews* (1965) 234 Cal.App.2d 69, 75, italics omitted.) "Consequently, the lack of an eyewitness placing defendant at the scene or other direct evidence to establish his guilt does not render the jury's verdict of guilty of arson constitutionally deficient. [Citation.]" (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1010.)

Applying the foregoing standards, we hold substantial evidence supports Sloop's arson conviction. We acknowledge this was a close case since, as Sloop notes, there

7

were no eyewitnesses to the crime, the arsonist's identity is not discernable from the surveillance videos, there was no forensic evidence directly linking him to the crime, and Sloop had no motive to commit the seemingly random crime. However, merely because the evidence in this case may lead to alternative inferences does not render the evidence insufficient. (See *Zamudio*, *supra*, 43 Cal.4th at p. 358 ["Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal"], citation omitted; see also *Beagle*, *supra*, 6 Cal.3d at p. 450 ["Motive . . . is not an element of arson . . ."].) Viewing the evidence most favorable to the judgment, we conclude the jury reasonably found Sloop was the perpetrator of the crime.

First, the jury reasonably found Sloop committed the arson based on the circumstantial evidence. (See *People v. Bean* (1988) 46 Cal.3d 919, 933 [" 'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt' "], citations omitted.) The evidence adduced at trial showed Sloop left his home just after midnight on May 1st in his black Mercedes sedan, which had a temporary paper license plate ending in -M03. At approximately 3:39 a.m., 10 minutes before the arson, C.K.'s home surveillance video caught a dark-colored sedan driving southbound on Mescal Street—the direction of Burnam's house. At the same time, a Flock camera captured a partial picture of the dark-colored sedan's paper license plate that matched the last three digits of the temporary license plate on Sloop's Mercedes. At 3:41 a.m., surveillance video from Burnam's neighbor on Plumas Avenue—who lives down the street from C.K.—showed the same dark-colored sedan turning onto Plumas Avenue from Mescal Street. The suspect then parked and turned off the car at about 3:42 a.m. At 3:45 a.m., four minutes before the fire, the suspect walked towards Burnam's house wearing a dark-colored hoodie, which covered the suspect's face, dark pants, and gloves. A few minutes later, the suspect

8

poured an ignitable liquid on Burnam's Honda Pilot SUV and ignited the flame which caused a bright flash. Immediately after the bright flash, surveillance videos captured the same suspect running back towards the dark-colored sedan parked on Plumas Avenue. At approximately 3:50 a.m. the suspect's vehicle was captured fleeing northbound on Mescal Street at a high rate of speed. Notably, no other vehicles traveled down Mescal Street during the period the arson was committed. At 4:04 a.m. Sloop arrived home in his Mercedes wearing a black hoodie and long pants, the same type of clothing the arson suspect wore. Significantly, Sloop lives north of Burnam, the time he arrived home is consistent with the 15-minute time period it would take to drive the seven-mile distance between Burnam's house and Sloop's house, and Sloop admitted no one besides him drove his car the morning of May 1st. Lastly, though Sloop did not have any visible burn marks on him days after the fire, Officer Van Cor testified the arsonist would not have suffered any burns since the suspect was wearing protective clothing.

The physical evidence also corroborates the jury's finding that Sloop was the arson suspect. Sloop's cell phone records show he plugged in his phone at 3:42 a.m., 3:50 a.m., and 4:05 a.m., which corresponds to the times the suspect turned the car on and off at Plumas Avenue, and when Sloop arrived home. Additionally, police found a beanie, lighters, and singed gloves that had a strong chemical smell in Sloop's Mercedes six days after the arson. While the gloves tested negative for ignitable fluid, the forensic chemist testified it was possible any testable residue had dissipated since the gloves were exposed to open air inside Sloop's car for several days. Officer Van Cor similarly testified that detectable ignitable fluids can dissipate quickly if not stored properly. Further, though Sloop's black zip-up hoodie was not tested, Officer Van Cor opined the white marks on the sweater were consistent with thermal damage he had seen on other garments in his career.

Finally, the jury was entitled to discount Born's testimony, Sloop's alibi witness. (See *People v. Tripp* (2007) 151 Cal.App.4th 951, 955 ["It is not our function to reweigh

9

the evidence, reappraise the credibility of witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact"].)  The jury could have reasonably determined Born was not a credible witness given her apparent bias towards Sloop.  Indeed, Born testified she talked to Sloop every day while he was in jail, gave him money, and admitted she would "try everything to make him happy."  In any event, Born could not account for Sloop's location on the morning of the arson.  Born testified that she saw Sloop at the casino on the *night* of May 1st—several hours after the arson was committed—and stated she could not remember whether she worked on the morning of May 1st.  (See *People v. Riggs* (2008) 44 Cal.4th 248, 311 ["The evidence indicating that [the] defendant [was guilty], was entirely overwhelming, especially in comparison to the exceedingly dubious alibi testimony provided by [the] defendant's [witnesses]"].)

Because the physical and circumstantial evidence was sufficient to support the jury's finding that Sloop was the arsonist, we must affirm Sloop's conviction.

### III.    DISPOSITION

The judgment is affirmed.

10

_____
Greenwood, P. J.

WE CONCUR:


_____
Danner, J.




_____
Bromberg, J.




H053084 People v. Sloop